## CARTER *v.* JOHNSON *et al.*

1. The bill of exceptions purports to set out a copy of an affidavit that was introduced by the plaintiffs. The copy shows pen and ink lines drawn through certain typewritten lines of the affidavit. There is no explanatory note by the judge, and it is not suggested that the marks were made fraudulently or without authority. In the circumstances the bill of exceptions will be construed as certifying that the erasures appeared in the original affidavit and were merely duplicated in transcribing the copy, and consequently that such erased portion was not admitted in evidence or considered by the judge in rendering the opinion.

2. Lines are also drawn with pen and ink through typewritten lines in the bill of exceptions, stating that such erased portion of the affidavit was admitted in evidence and that its admission was erroneous for stated reasons. Relatively to this there is likewise no explanatory note or suggestion of fraud. In the circumstances it will be presumed that the erasures last mentioned were made before the judge signed the bill of exceptions (*Smith* v. *Wrightsville & Tennille Railroad Co.*, 83 *Ga.* 671 (3), 10 S. E. 361), and the striking of such words will be construed as refusing to certify to the truth of the allegation that the proposed evidence was admitted, or to the ground of exception.

(a) It is not good practice to certify bills of exception in this form. *Clayton* v. *May*, 68 *Ga.* 27.

3. As a general rule, at the hearing of an application for interlocutory injunction the testimony is introduced by means of affidavits; but where witnesses are present without objection on their part, for the purpose of testifying, the presiding judge may in his discretion allow them to be examined orally. *Chattanooga &c. Ry. Co.* v. *Morrison*, 140 *Ga.* 769 (3) (79 S. E. 903).

(a) In the circumstances of this case the judge did not abuse his discretion in refusing to allow the defendant, as a witness in his own behalf at the interlocutory hearing, to be examined orally.

4. Where an owner receives purchase-money notes for a particular tract of land and executes a bond obligating himself to execute a deed conveying

the land to the purchaser on full payment of the notes, and puts the purchaser in possession, the vendee acquires an equitable interest in the land while legal title remains in the vendor. The retention of legal title by the vendor is as security for payment of the notes.

5. Where secured purchase-money notes are transferred by indorsement in blank and delivery to a third person, the transfer will carry the security or such equitable interest therein as will authorize an action by the transferee to subject property to which the security attaches to payment of the notes. In the circumstances the transferee, relatively to the property, has a superior standing to a mere general creditor.

6. As a general rule creditors, who have not reduced their claims to judgment, and who have no lien, title, or interest attaching to the property of their debtor, have no right to invoke interference therewith by injunction and the appointment of a receiver (*Dodge* v. *Pyrolusite Manganese Co.*, 69 *Ga.* 665); but a transferee of purchase-money notes executed under circumstances indicated in the preceding notes has such equitable interest in the security as will authorize him to apply for injunction and receiver on the property to which the security relates, in a case where the facts would render the grant of such relief appropriate.

7. In a transaction of the character mentioned in the fourth note, if the chief value of the property consists of a cotton-oil mill located on the land, in connection with which is a gin-house and ginning outfit, and if the building containing the oil-mill is destroyed by fire and the machinery greatly damaged, and if there is danger of loss or deterioration in value of salvage consisting of bricks and damaged machinery on account of being left on the land unguarded and exposed to the weather; and if the purchaser himself is insolvent and the value of all the property after the fire, when added to money arising from insurance on the oil-mill, is less than the amount of the purchase-money notes, a proper case would be presented for intervention of equity and the grant of injunction and appointment of a receiver. While the transferee of the purchase-money notes would have a remedy at law by attachment for purchase-money, that remedy would not be as complete or adequate as the remedy in equity.

8. Under the pleadings and the evidence, which to some extent was conflicting, the judge did not abuse his discretion in appointing a receiver and in granting an interlocutory injunction.

No. 3384. September 6, 1923.

Injunction and receivership. Before Judge Highsmith. Jeff Davis superior court. June 30, 1922.

In a contract of sale of a cotton-oil mill and ginning outfit and eight acres of land on which they were located, purchase-money notes aggregating $49,554.66 for the price of the entire property were executed by the vendee, who took possession under a bond for title. The latter instrument contained an accelerating clause whereby all the notes might be declared due by the payee on failure

to pay one of them at maturity. The notes were indorsed by the payee in blank. Before maturity of the first note the oil-mill and appurtenant buildings, except a small office building, were destroyed by fire. All that was left of the property was the land, the office-building, the ginning outfit and certain salvage consisting of damaged machinery, bricks, and other equipment of the oil-mill. The property so remaining was of the value of $5000, which, when added to the amount of $35,523.10 realized from insurance on the burned property that had been paid into the United States court, in a pending suit, was insufficient to pay all the purchase-money notes. The vendee was insolvent and failed to pay the first note at maturity. Suit was instituted by alleged transferees of the notes, for judgment on the notes, to be declared a lien on the land; for injunction to prevent the vendee from disposing of the salvage; and for appointment of a receiver to take charge of the salvage, land, and office building, to be held subject to the order of the court. The answer of the defendant denied allegations in the petition to the effect that the vendor had conveyed the land to plaintiffs, and that plaintiff was holder of the notes; and alleged that the notes were transferred by the vendor to a named bank, and that such bank was holding and demanding payment thereof. After the filing of the answer the bank last mentioned filed an intervention alleging that it held the notes under the plaintiffs as collateral security for an indebtedness of the plaintiffs, and praying for judgment, injunction, and receiver. The order sanctioning the original petition contained provisions restraining the defendant and appointing a temporary receiver, and ordering the defendant to show cause at a stated time and place why a receiver should not be appointed and an injunction should not issue as prayed. After several postponements the hearing came on at chambers more than six months after the date of the rule nisi. There was never any order with respect to the taking or filing or service of affidavits to be used at the hearing. The intervenor did not introduce any evidence. After introduction of evidence by the plaintiffs and defendant, the judge appointed a permanent receiver and enjoined the defendant, as prayed, until the further order of court. The defendant excepted.

S. D. Dell, for plaintiff in error.

Gordon Knox, E. K. Wilcox, and J. C. Bennett, contra.

14

ATKINSON, J. (1, 2, 3, 6, 7, 8). The rulings announced in the first, second, third, sixth, seventh, and eighth headnotes do not require elaboration.

4. In this State, since the adoption of the first Code in 1863, there has been no vendor's equitable lien for the purchase-money of lands. Civil Code (1910), § 3373; *Jones* v. *Janes,* 56 *Ga.* 325; *Green* v. *Hall,* 151 *Ga.* 728 (108 S. E. 42). The case first cited involved competition between the holder of purchase-money notes given for land and claims of general creditors. It was held, inasmuch as the vendor's equitable lien was abolished, that the purchase-money notes were not entitled to preference. It was remarked, however, that " It is not pretended that the land was not conveyed to the vendee by absolute deed;" and the decision was rendered on the basis that the vendor had excuted to the vendee an absolute deed. The latter case was also one in which the vendor had executed to the vendee an absolute deed. Of course in all such cases the vendor retains nothing, as the deed conveys all that he had; and since the law no longer provides for a vendor's equitable lien, the vendor will have no security whatever where he makes an absolute deed to the land, unless he acquires security by mortgage or other form of contract executed by the vendee. It is different where the vendor executes only a bond for title. In that case the contract of sale remains executory. The vendor retains legal title to the property as his security. Perhaps no direct ruling has been made by this court to that effect, but the plain common-sense of such a transaction is that the vendor retains title as his security, and it has been recognized by this court for many years. *Tompkins* v. *Williams,* 19 *Ga.* 569; *Tumlin* v. *Vanhorn,* 77 *Ga.* 315 (3 S. E. 264); *Cade* v. *Jenkins,* 88 *Ga.* 791 (15 S. E. 292), and cases cited; *Littleton* v. *Spell,* 77 *Ga.* 327 (3) (2 S. E. 935).

5. Treating the retention of title by the vendor as security for the purchase-money notes, as ruled in the preceding division, there is no reason why such security should not stand on the same basis as any other security, and be governed by the same legal principles, when it comes to the matter of a transfer or assignment of such security. In the case of *Tompkins* v. *Williams,* 19 *Ga.* 569, it was held: " A vendor who gives to the vendee his bond for titles to land, taking his notes in payment of the purchase-money, and

afterwards transfers the notes without recourse over against him, can not maintain an action of ejectment against the vendee, on his own account, to recover the land." This was a distinct recognition of the principle that a transfer of purchase-money notes for land, secured by the retention of title in the vendor by operation of his bond for title, would carry the security. The case of *Van Pelt* v. *Hurt,* 97 *Ga.* 660 (25 S. E. 489), involved a transaction where a promissory note was secured by a deed to land executed under the provisions of the code for securing a debt, and the transfer of the note by written assignment without any express transfer of the security. It was held that the transfer of the note carried with it an equitable interest in the security. It was said in the opinion: " An assignment of a promissory note or other evidence of indebtedness, to secure which a deed to land has been given by the assignor, does not pass to the assignee the title to the land itself. The assignee acquires, however, an equitable interest in the security, which, when necessary to the collection of the debt, he may assert as against the debtor; and in such case a court of equity, upon proper pleadings and evidence, will afford appropriate relief. If the security had been a mortgage, instead of a deed conveying the legal title, the transfer of the debt secured by the mortgage would have carried with it the mortgage itself. (See *Murray & Co.* v. *Jones,* 50 *Ga.* 119, and cases cited; Colebrook, Collateral Securities, § 144.) And so, where the security is a deed conveying the legal title, the transfer carries with it an equitable interest in the security, though not the legal title; and a court of equity will give effect to the transferee's rights in the premises. See *Henry* v. *McAllister,* 93 *Ga.* 671." What is said above is applicable and controlling in this case upon the point ruled in the fifth headnote. See also *Clark* v. *Havard,* 122 *Ga.* 273 (50 S. E. 108). The principle above stated was the law before the Code of 1895, but for the first time it was carried into that code (§ 3684), which declared: " The transfer of notes secured by a mortgage or otherwise conveys to the transferee the benefit of the security. If more than one note is secured and the mortgagee transfers some and retains others, the holder of the transferred notes has a preference over the mortgagee if the security is insufficient to pay all the notes." That code was adopted by act of the legislature and has the force of statutory

law. It appears from a marginal note therein that the section cited was taken in part from the case of *Crowder* v. *Dunbar,* 74 *Ga.* 109, 111. That case involved a transaction where a vendor had received a certain amount of cash and purchase-money notes for a tract of land, and executed a bond conditioned to make title to the land when the purchase-money notes should be paid. In the course of the opinion it was said : · " It is a general rule that when a note is transferred, which is secured by mortgage or other security, it carries with it the securities, and the transferee would be entitled to have his debt paid first out of the money raised on the security. *Roberts* v. *Mansfield,* 32 *Ga.* 228." It was on the basis of this clause of the opinion the code section was formulated. It will be noted that the decision used the language " secured by mortgage or other security." As " the security " that was involved in that case was " the security " afforded by retention of title resulting from the execution of a bond for title, the words " mortgage or other security " manifestly included security which would result to an obligor by retention of title in a bond for title. And where the statute used the language, " secured by a mortgage or otherwise," the word " otherwise " was manifestly intended to be broad enough to include a security resulting from retention of title in a bond for title. See also In re Elrod, 215 Fed. 253. In the case of *Berry* v. *Van Hise,* 148 *Ga.* 27 (95 S. E. 690), it was said : " These statutes in terms apply to notes secured by mortgage and other liens, and do not contemplate purchase-money notes which are not so secured but in connection with which there is a contract reserving title." It was not necessary to a decision of that case to make such a ruling. That was an improper construction of the statute, and will not be followed. Giving the statute the proper construction as indicated above, which must be done in the light of its history, its application would require the ruling hereinbefore announced, based on the decisions of this court prior to the adoption of the Code of 1895.

    *Judgment affirmed.* ·*All the Justices concur.*

RUSSELL, C. J., concurs in the result.